UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMC CORPORATION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 14-cv-12524-IT |
| | * |
| JEREMY LEBLANC, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

August 11, 2014

TALWANI, D.J.

I. Introduction

Plaintiff EMC Corporation ("EMC") claims that its former employee, Defendant Jeremy LeBlanc, improperly disclosed confidential EMC information and solicited EMC customers in contravention of his Key Employee Agreement ("Agreement"). LeBlanc has moved to dismiss EMC's complaint for injunctive or declaratory relief or, in the alternative, to transfer venue, arguing that all of EMC's claims fall within the scope of EMC's Arbitration Policy. Def.'s Mot. Dismiss, Alternative, Transfer Venue [#34]. As set forth below, the Agreement allows the parties to seek from this court preliminary injunctive relief needed to preserve the status quo pending arbitration, and accordingly, LeBlanc's motion is DENIED.

II. Background

EMC employed LeBlanc, a resident of North Carolina, from February 1999 through December 2005 and again from July 30, 2012 until May 17, 2014. See Verified Am. Compl.

¶¶ 7, 8, 18 [#16] [hereinafter Am. Compl.].

LeBlanc and EMC executed a Key Employee Agreement (the "Agreement"), which provides, in relevant part:

> You agree that binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute (defined below) initiated either by the Company or by you arising out of or relating to your employment by the Company to the fullest extent permitted by law . . . . "Legal Dispute" includes but is not limited to any claim relating to (i) compensation; (ii) the termination of employment; (iii) discrimination, harassment or retaliation including under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, and any other federal, state, or local laws; (iv) severance; (v) reinstatement; or (vi) any other employment-related legal claim, and attorneys' fees and costs relating to any of the above; provided, however, that you or the Company may file and pursue litigation in a court proceeding for temporary, preliminary and permanent injunctive relief, or for declaratory judgment. Any damage claims related to the subject matter of such litigation will, however, be submitted to arbitration. Any such arbitration shall be conducted pursuant to the Company's arbitration policy, including but not limited to procedures regarding selection of arbitrators and payment of fees and expenses.

Key Employee Agreement, ¶ 8 [#1-1] [hereinafter Agreement]. Elsewhere, the Agreement continues: "You agree that the exclusive venue for any action seeking declaratory or injunctive relief for violation of this Agreement is in the state and/or federal courts located in Massachusetts . . . ." Id. ¶ 7(h).

EMC's Arbitration Policy, which is referenced in the Agreement, "supersedes anything in the . . . Agreement which is not consistent with th[e] Policy." Arbitration Policy [#36-1]. The Arbitration Policy provides, in relevant part:

> Binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute (defined below) initiated either by the Company or by an Employee arising out of or relating to an employee's employment by EMC . . . . "Legal Dispute" includes but is not limited to any individual claim relating to (i) compensation, (ii) the termination of employment, (iii) discrimination, harassment or retaliation including under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, and any other federal, state, or local laws, (iv) severance, (v) reinstatement, or (vi) any other employment-related legal claim, and attorneys' fees and costs relating to any of the above; provided, however, that the Employee or the Company may file and pursue litigation in a court proceeding for temporary, preliminary and

permanent injunctive relief. Any damage claims related to the subject matter of such
litigation will, however, be submitted to arbitration.

Id. Elsewhere, the Arbitration Policy continues:

> D. Locale of Arbitration. The arbitration will take place in the county which was the employee's principal place of employment at the time the action(s) in question occurred unless the parties agree to another location or forum non conveniens requires a different location. . . .
> G. Discovery and Conduct of Hearing. The rules governing the procedures for discovery and the conduct of the arbitration hearing shall be those found in the then current JAMS Employment Arbitration Rules and Procedures. . . .
> J. Governing Law/Severability. Except when a statutory claim requires application of other law, the Legal Dispute shall be resolved in accordance with the laws of the Commonwealth of Massachusetts.

Id. ¶¶ D, G, J.

Finally, the JAMS Employment Arbitration Rules and Procedures (the "JAMS Rules") referenced in the Arbitration Policy provide, in relevant part: "Jurisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator. . . . [T]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Employment Arbitration Rules & Procedures (July 1, 2014), Ex. 2 to Aff. Katie M. Versfelt Supp. Def.'s Mot. Dismiss, Alternative, Transfer Venue [#36].

III. Discussion

LeBlanc moves to dismiss on the ground that EMC's Arbitration Policy covers the resolution of all employment disputes between the parties and reserves all questions of arbitrability to the arbitrator.

According to LeBlanc, because the Arbitration Policy incorporates the JAMS Rules, and the JAMS Rules reserve all questions of arbitrability to the arbitrator, an arbitrator must decide here whether EMC's claims must be arbitrated. As a general rule, the question of the determining whether parties agreed to arbitrate a dispute is a question for this court. See Granite Rock Co. v.

3

Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010) ("[E]xcept where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." (quotation marks and internal citations omitted)); First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943–44 (1995) (explaining that whether an issue is subject to arbitration under an agreement containing an arbitration clause is presumptively a matter for the court, not the arbitrator, to decide). The Arbitration Policy provides only that the JAMS Rules govern "the procedures for discovery and the conduct of the arbitration hearing." Arbitration Policy ¶ G [#36-1]. The threshold question of arbitrability does not fall within either of these categories. For that reason, this court must determine whether the parties agreed to arbitrate this dispute.

To determine this question of arbitrability, the court turns to the language of the Arbitration Policy. The Arbitration Policy states that "[b]inding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute . . . initiated either by" EMC or an EMC employee. Id. At the same time, the Arbitration Policy allows EMC or an EMC employee to "file and pursue litigation in a court proceeding for temporary, preliminary and permanent injunctive relief" (the "Carve-Out"). The Arbitration Policy provides finally that "[a]ny damage claims related to the subject matter of such litigation will, however, be submitted to arbitration." LeBlanc argues that the only way to harmonize the Arbitration Policy with the Carve-Out "is to allow the parties to seek equitable relief in court only to the extent that it aids the arbitration process rather than circumvents it." Def.'s Mot. Dismiss, Alternative, Transfer Venue, 5 [#35].

This court agrees with LeBlanc insofar as he contends that the Carve-Out should be read to aid the arbitration process. But dismissing this action (or transferring it to another venue) is not the only way to aid the arbitration process. It is perfectly consistent with the language of the

4

Arbitration Policy, given the Carve-Out, for this court to consider whether EMC is entitled to preliminary injunctive relief needed to preserve the status quo until the parties arbitrate this matter. Indeed, whether or not this court granted a preliminary injunction would not hinder an arbitrator's ability to resolve the underlying dispute.

LeBlanc moves, in the alternative, for this court to transfer venue to the Eastern District of North Carolina. He argues that the Arbitration Policy acts as a forum selection clause requiring the parties to submit their claims to mandatory arbitration in North Carolina [1] and he seeks the transfer to the Eastern District of North Carolina so that a court may order the parties to arbitrate the dispute.[2] This request, however, is premature where no party has sought to compel arbitration. That is, there is no petition to compel arbitration currently before this court that allows, let alone requires, such a transfer of venue. Moreover, the District of Massachusetts is the proper venue to consider the motion for preliminary injunction. See Agreement ¶ 7(h); Arbitration Policy ¶ J [#36-1].

For these reasons, LeBlanc's motion to dismiss or transfer venue fails.

IV.  Conclusion

For the foregoing reasons, LeBlanc's Motion to Dismiss or, in the Alternative, to Transfer Venue [#34] is DENIED.

IT IS SO ORDERED.

Date: August 11, 2014                    /s/ Indira Talwani
                                         United States District Judge

---

[1] Because LeBlanc's principal place of employment while at EMC was North Carolina, under the terms of the Agreement and the Arbitration Policy, any arbitration between the parties must take place in that state. See Arbitration Policy ¶ D [#36-1].

[2] A federal court may compel arbitration only within its own district. 9 U.S.C. § 4.